The case today is number 20-1268, United States v. Francis M. Reynolds. At this time, would counsel for the Appellee of the United States please introduce himself on the record to begin? Good afternoon, Chief Judge Barron, and may it please the Court, Mark Quinlivan on behalf of the United States, if I might reserve two minutes for rebuttal? You may. Thank you. This Court should decline to adopt the doctrine of abatement of initio. It's not required by any source of positive law, nor any decision of the Supreme Court. It is instead a judicially created common law doctrine. And as a creature of the common law, I would suggest that this Court must ask, do the principles underpinning it withstand scrutiny? Would its adoption promote respect for the law, and is it consistent with contemporary legal norms, including the protection for victim rights that Congress has enacted? The answer to each one of those questions is an unequivocal no. Neither the finality nor the punishment principles withstand scrutiny. Adoption of this doctrine would undermine rather than promote respect for the law, and it really is a slap in the face to the victims of crime and their loved ones, because it the law. I think the Supreme Court of Louisiana put it best. To abate a conviction is to say that there was no crime and no victim. That defies common sense. And that's why at least 31 states have declined to adopt or rejected that doctrine. We respectfully ask that this Court become the first federal court of appeals to do the same. Well, you would certainly support abatement if the defendant died in the middle of trial. I'm sorry? Sure. Suppose the defendant died in the middle of trial. Oh, absolutely. Would you support dismissing the abatement? Absolutely, because the presumption of innocence. So the Louisiana saying would be equally apt. It would mean there was no crime, no victim. Well, fundamental difference, Judge Chaotic, because of course at the trial level, there's the presumption of innocence. And so the law presumes that there was no crime. Sure. But as far as the aptness of the catchy phrase, it applies both. So it doesn't help us decide. If we want to decide, we need to get to what you're talking about now, which is, is something different happened and does that, i.e. the conviction, and does that therefore mean we should do what we do other than we would have done had he died before the conviction? Sure. Absolutely, Judge Kiyama. And I would just point out that what that court said is consistent with the argument we're making here in as much as, and it's consistent with the bedrock principle, that the presumption of innocence disappears once a defendant is convicted of a crime. And indeed, we've pointed to other examples of how that... There's a countervailing notion that even though there's been a conviction, until that conviction for error, then it shouldn't count as a final judgment. And we all know, because we're here, that lower court trials are often plagued by trial error and result in reversal. Yes, Judge Thompson, and two answers to that. First off, again, if there is a concern about an unreviewed judgment, I would suggest that the far superior approach is that taken by several courts, including the Supreme Judicial Court of Massachusetts in the Aaron Hernandez case, which is to just enter a notation in the record that this court, for example, in its judgment could say, having been informed that the defendant died while his or her appeal was pending, the appeal is dismissed as moved. That doesn't suggest in any way that the underlying judgment is being affirmed. Or the court can go further, as the SJC did in Hernandez, and instruct the district court to enter an order that said, the presumption of innocence having been removed by virtue of the defendant's conviction, the defendant took an appeal, the defendant died while the appeal was pending, and the underlying conviction was neither affirmed nor reversed. What does the abatement doctrine say that's really different than that? In other words, it's not as if when we abate, we don't say that the reason we're doing it is because he died. So, the public expression of the abatement doctrine acknowledges there was a conviction, and then says, because of this unusual circumstance of appeal having been pending, and him having died at the time, that's why the conviction is being removed, and for no other reason. Well, Chief Judge Barron, I would suggest it is fundamentally different, because I go once again to the point that it runs counter to the principle that the presumption of innocence has disappeared by virtue of the defendant's conviction. And I think what happened in the Sampson case is a perfect illustration of that. But there was no conviction in the Sampson case. It was being challenged. That's correct. But when Mr. Sampson died, when this issue was first raised, this court asked, do we apply the abatement doctrine? The abatement doctrine, I thought, a precondition for it was that the appellant is challenging the conviction at the time of death on appeal. That is what several courts of appeals have held, and that's what this court ultimately adopted. But Sampson doesn't address that situation, because he wasn't challenging the conviction at the time of the appeal. That's correct. That's what this court decided, but that was not, when this issue was first raised, that was one of the questions that this court asked the parties to address. And imagine, I would suggest, to the victims of crime and to their loved ones, it's a fundamentally different thing to say that a defendant's conviction is being vacated because he or she died while their appeal was pending than to simply enter a notation in the record explaining the circumstances under which that appeal was dismissed as moot. So you're saying it's fundamentally different because of the psychological impact? I think that that is one consideration that this court should take into account. Again, this is a ... How else is it fundamentally different besides the psychological impact? I mean, because if you look at the restitution piece, that doesn't wipe out a possible cause of action in a civil lawsuit. Well, it's fundamentally different, Judge Thompson, and I point to what now Chief Judge Seitz said when she urged the Seventh Circuit to reexamine that principle in the Volp and Desto case. She said that, or wrote that, an unreviewed judgment is neither suspect nor lacking in finality in any relevant sense. There's two different things going. One is an analytic point, which is the point you just made. The other is a practical point, which is a claim about what effect on society choosing one way of handling this problem rather than another is. So those aren't the same argument, though it doesn't necessarily follow from the analytic point that actually this is how victims will experience the actions of the court. And vice versa, just because there might be that experience doesn't mean the analytic point is right. So they seem like different points. Well, I think they both point in the same direction, Chief Judge Barron. The analytic point is that while an appeal is appending, in the eyes of the law, that is a defendant who stands convicted. And there are extreme examples that one could posit on each side. But I would point out that there are times, for example, when defense counsel file an Andrews brief saying that the appeal is so frivolous that adversary presentation is not required. But if a court has not acted on that when a defendant dies, under the abatement doctrine, the conviction has to be vacated. Or perhaps take an even more extreme example. A defendant themselves moves to dismiss his or her appeal. But before the appellate court acts on that motion, under the abatement doctrine, if he or she dies while that is still pending, that conviction has to be reversed. As you identify, you can obviously pick quite extreme examples on the other side in which there was a very unjust conviction. On the face of it, it's evident. Very biased judge at the trial court level in a pending appeal with a very strong appeal. And then that conviction has to stick just because of the happenstance of death. That's your position, right? That's the position. But I would say one thought is between those two circumstances, there is a lot of history as to how this actually has been resolved. And as I understand it, for at least half a century, every single circuit in every part of the federal judiciary has come out the same way, which is contrary to your position. And we, in at least unpublished opinions, have followed that same practice. So I guess in the face of this, why wouldn't we start with a fairly strong presumption that it have to be quite evident that the obviously correct rule is the one you're arguing for? Even if we are starting as the very first court to decide it, or one of the first courts, we might not think that there was such a strong presumption in favor of keeping the doctrine. Chief Judge Baird, I would disagree that this court has to start with that presumption. And I'd point to what this court has said in like circumstances. So I'd point to two decisions in addition to those we cited in our brief. The first is In Re Atlas IT Corporation, where this court noted scholarly literature that said subsequent courts, there's a herding or cascading effect, where subsequent courts simply follow earlier decisions. So is that evident here? Yes, I think. If you look at the federal court decisions and contrast them with this. Just take the Second Circuit opinion by Judge Katzmann. It doesn't read like a herding opinion. It seems like a very thoughtful grappling with the doctrine, which has a very long pedigree. And the Supreme Court, at least in Durham, described the consensus as impressive, not shallow. And two points. First off, that decision predated. I don't mean predated the enactment of the Victim Rights Act. So there's that. I do want to point out, though, what this court went on to say in In Re Atlas Court, which is, and I quote, we always feel it incumbent on us to decide afresh any issue of first impression in this court. Sure. Sure. You've been here a lot and done very well. You often don't pick up a case when you open your file and see I've got 11 circuits to none going against me. You would realize that's a heavy lift. I think that's all of it's saying. And yes, you point to the herding possibility. But how do you explain the ALI's position on this? They aggregate law professors, practitioners, defense attorneys, prosecutors. And the ALI takes the position that death undoes the res judicata effect of the conviction. Two points, Judge Chiata. First off, I would point out that just three years ago in Shea versus the United States, this court disagreed with nine other circuits as to whether or not Johnson applied to the then or the pre-Booker mandate. Sure. Nobody's saying we're locked in. It's something you wanted, as Judge Barron said. You have to have a pretty good argument to upset an apple cart that is going uniformly across the country without any sign of it being a big problem. Well, just to add to that, in the Johnson case, that's a situation every court is facing a novel question. And roughly contemporaneously, we weigh in. And we don't take the position that just because we're a little bit later than somebody else, we have to do what everybody else said. Obviously, we take account of their reasons. But this is a different situation. You're asking us now when for a half a century since the Supreme Court last looked and said there was an impressive consensus, all the courts have lined up that way. And that consensus itself seems to date back yet another 50 years, if not more. So that's a pretty different situation. Now you're saying, well, this issue, which has been considered by the federal judiciary for basically a century, no one has taken your position. Congress has not weighed in directly unless you say the Victim Rights Act is even of the conviction question to take your position. We now should come along and say, well, yeah, we know better than all of these people. It's not a very Burkean position. Well, Chief Judge Baird and I disagree that no one's adopted our position. Because in fact, as we noted in our brief, the majority of state courts that have now considered this question and have reanalyzed their own precedent, including the unanimous Supreme Judicial Court of Massachusetts in the Aaron Hernandez case, have come to the conclusion that contemporary legal norms have changed, that the principles underlying this doctrine don't stand up to close scrutiny, and that the advent of victim rights statutes, whether under state constitutions or statutes, is inconsistent with adoption of the doctrine, and that the far better approach is to simply note in the record that the appeal was dismissed by virtue of a defendant's death while the appeal was pending. Before you sit down and others have questions, I just want you to respond to the ALI question that Judge Coyota had asked you. Judge Coyota, I would just point out that there is increasing scholarly recognition in recent years as well about why the abatement doctrine doesn't make sense, and has been cited by numerous state Supreme Courts, including the SJC, the Supreme Court of Tennessee, and Alma Torey, and several other courts. So I certainly understand that if we were looking at this 10, 15 years ago, it would be a different subject. But I would ask this court, in looking at this issue, to contrast the depth of reasoning in the federal court decisions that have adopted this doctrine by comparison to recent state Supreme Courts that have rejected it. Do we have any data on the percentage of federal convictions that are in some way reversed on appeal? We don't, Judge Coyota. I can say that I have not seen in our office up until a year ago this situation occur. But in addition to Sampson and this case, there are two other pending appeals where a defendant died while his or her conviction was pending. No, I wasn't asking about how many cases like this. I was asking what percentage of convictions overall in the federal system are reversed. I can't give you a direct answer, Judge Coyota. What I have seen in the past is that it is under 5%. I would just add that I don't want in any way for our argument here to be a suggestion that the appeal process is unimportant in the federal system. It is. The collateral review process is equally important. And a lot of convictions are overturned not on direct appeal but on collateral review based on ineffective assistance of counsel, which typically is not raised or decided at the direct appeal level. But the abatement doctrine would not apply in that context. And I would suggest that's yet another reason why in exercising this court's judgment and reason, it should conclude that not to adopt this doctrine. Can I just ask you one final point that occurs to me? If we did not adopt the abatement doctrine and we just treated it with the right lens and just be pure appellate mootness, is that right? Yes. Now, the Supreme Court has applied Munsingware in some criminal appeals. So can you just walk me through if I just felt, OK, the abatement doctrine made up. We're not bound by it. We shouldn't follow it. Presumably, we then do have to follow Munsingware. That's right. And how would that analysis play out? Well, I think it would play out as it did in the Sampson case. Well, with respect to the conviction, I guess, because what you said in Sampson that no argument was made about Munsingware. So how would you do the Munsingware analysis? Well, I think the Munsingware analysis would simply mean that the entire appeal, conviction and sentence, remains in place. I do want to correct one point that was raised in the reply brief, which was that Sampson wasn't a direct appeal. It was a direct appeal. It was the direct appeal from his second sentence of death after a second penalty phase trial. But I think in terms of Munsingware. Yeah, I thought in Munsingware, sometimes when the appeal, I may have gotten confused, I thought when there's a mootness, then there's a question about what about the underlying judgment. Is that wrong? I can't answer that question right now. I would say that in terms of I don't think I've seen any decision in which a court has declined to adopt the abatement doctrine. But have done it on the same conclusion based on Munsingware. Based on Munsingware. But if we say it's moot, the conviction and the judgment, I mean, everything remains intact below. That's correct. And again, Judge Thompson, if there's any concern about what that may suggest to the general public, that can easily be remedied by adopting an approach similar to that taken by the SJC in Hernandez and several other state courts. But I had just another question. So when the defendant appealed the conviction and the restitution order specifically, he died. And no court has had an opportunity to make a determination as to whether the restitution was correctly or incorrectly calculated. So if abatement doesn't apply, and presuming, I know you guys have put in a lot of effort trying to do some background research on this. But if the defendant had an estate with heirs that had an interest in that state, what vehicle would they be able to utilize if the judgment remains intact to contest what they, along with the dead person now, thought was an unfair restitution order or an incorrect restitution order? Or they just stuck with it? Two answers, Judge Thompson. First, it does go to one of the points we noted in our brief, which is Congress has said in Section 3613B that in the event that someone subject to restitution dies, the individual's estate is subject to that restitution. But assume that statute was not contemplating the death having occurred prior to the appeal having been adjudicated. Well, there certainly is. I know you may not say, but just for purposes of answering Judge Thompson's question, if we assume that statute doesn't speak to that circumstance, then the practical question that you're being asked is, well, you have an unappealed but pending appeal challenged to the restitution order. They couldn't very well pursue that appeal. But they're then stuck with the judgment. And they'd like to contest the legitimacy of the restitution order. But he died. On your view, that means it has to be treated as a valid restitution order. What's the answer to that? Well, I think it would be valid in the sense that the appeal would simply be dismissed. I mean, I can't prejudge what forms of relief, whether the estate could file, perhaps, a collateral challenge or a writ of quorum nobis or audita carola. I don't know how that necessarily would play out. You see how there's a one-way? It's only a one-way street. If we adopt your view, then the estate is stuck. That's end of it, unless writ of quorum nobis. Good luck. But if we stay with the traditional view, the victims and the government still have available to them a civil action in which they would not be barred. So that's correct. So it's a one-way street you're asking us to adopt as far as the subsequent procedures that bear on an action against the estate. That's right, Judge Chaotic. But with the exception that, as a matter of positive law, we know what Congress intended in that situation in terms of Well, we only know that if we read that statute as referring to pre-appeal, which doesn't say. Well, I think that statute on its terms applies without exception. Keep in mind, when we're talking about derogation of the common law, we read statutes in a particular way that isn't beneficial to your interest. Judge Chaotic, I think our position is actually find support with what the Tenth Circuit did in its unpublished decision in the Coddington case, because they noted the government's argument about this particular statute, but said, we're constrained by circuit precedent. The logic of your thing is that in that statute, which addressed only a particular type of remedy, without saying so, they meant to overturn the existing consensus among the entire federal judiciary, save for the First Circuit, because we hadn't weighed in, that the doctrine of abatement was the prevailing law. That's your position? No, I think I would phrase it slightly differently. I think you'd probably be right. I would phrase it that application of, now that that statute has been passed, which I believe it was in 2016, adoption and application of the abatement rule would be in derogation. But that would mean that that must have been what Congress intended, was to get rid of that doctrine, which is hardly a doctrine they weren't, we presume that they're aware of it when there's that significant consensus among the courts of appeals. And I don't think there's any way to otherwise to read it, given that there is a class. Was there any reference in the debate over it about the abatement doctrine? Not about the abatement doctrine, but it was a, I believe we noted. Because it would certainly be possible to read that statute to be contemplating a much more common scenario, which is that the person dies after the adjudication of the appeal. I don't, well, for all the reasons we've set forth, I mean, that would, again, fly in the face of the settled principle that the presumption of innocence no longer applies. And it would fly in the face, I would suggest as well, section 3143, because a defendant's liberty interest is, as the Supreme Court said, one of the most elemental of rights. And yet, once a defendant is convicted and files an appeal, he or she isn't automatically entitled to release. They have to meet the statutory standards that Congress has set. Any final questions? Thank you very much. Thank you. Thank you, counsel. At this time, if counsel for the amicus would please introduce herself on the record to begin. Good afternoon, your honors. Judith Meisner, as amicus. Could you just pull your mic down a little bit? Thank you. Sorry. I am shorter. In terms of Munsingware, I believe that Munsingware requires vacating the judgment below in the Supreme Court in the cases that have followed Munsingware. So could you just do that Munsingware analysis? It's not entirely clear how you're supposed to do it. But I am a little puzzled what's the relationship between the abatement doctrine and just the ordinary principles of how a appellate court deals with an action that becomes moot when an appeal is pending with respect to the judgment below. Well, I mean, in Munsingware, I think there's perhaps a difference between the civil or different. Except that the court has applied Munsingware in some criminal appeals. But it has primarily been applied civilly. And in those applications, the court has said you vacate the judgment below where there has been no effort to preserve, I believe, the rights that are being challenged. But I have not seen Munsingware applied in the cases that or discussed in the cases where the 11 other circuits have adopted and applied the abatement benicio rule. And while a number of state courts have retreated from that, there are also some state courts that have recently adopted and reaffirmed that, including Colorado in 2021 and the DC court in 2021. I think it goes back to the fundamental nature of the appeal as of right, which goes back to 1879 and 1891. And the courts have said it's grounded, that that right is grounded in procedural due process concerns. Supreme Court says that the defendant is entitled to effective assistance of counsel on the first appeal as of right, both as matters of equal protection and due process. And in Evitz, talked about the intersection of the Sixth Amendment Gideon right with the due process and equal protection right. So it's not simply the direct appeal is not simply a formality or a form. It's a fundamental part of our criminal justice system. And the- Can I ask you just how- this is maybe a jurisdictional question, which is raised by the fact that you're just an amicus, and that otherwise there's no one on the other side of this v. Which is, the case is, we have a case pending on our docket. It happened the party prosecuting the appeal passed away. So we could just dismiss the appeal. And I guess the question I have is, what gives us the right to do anything more than that? So I understand there's this doctrine that's out there. But just as an Article III matter, just as a jurisdictional matter, what authorizes us to not simply just dismiss the appeal, but to actually go and vacate a judgment that no one is any longer at present prosecuting an appeal from? Well, if the defendant had court-appointed counsel below, that appointment follows through under the Criminal Justice Act until relieved by this court. So I suppose counsel- Is there a continuing controversy if the person is dead? Well, under the concept that the defendant has the right to have resolution, to have finality, to have resolution- But is it a right that survives death? Yes. I think that the abatement doctrine is saying that. But that doesn't make sense. Because if it's a right that survives death, it means that we should be able to decide whether he's living or not living. Well, you have a death certificate in these cases saying that the defendant is no longer living. So counsel- I mean, is it just a species of what the court has said with respect to Munsing? We're understanding that this is a different doctrine. But that the fact that a case is mooted on appeal doesn't preclude the appellate court from interfering with the judgment below, notwithstanding that the appeal is no longer being prosecuted. It's part of this court's resolution of the appeal. It is dismissing the appeal and instructing the court below to vacate the conviction and dismiss the indictment. So it's all part of this court's resolution of the appeal as moot. Well, dismissing the appeal can maybe be reasonably viewed as case management. But does that also include vacating a lower court judgment? And that's not our judgment. And we haven't had a chance to review it. So dismissing our appeal, it doesn't necessarily follow that the lower court judgment has to be vacated. Well, it does under the abatement doctrine that has been adopted by all the other federal circuits. That's what Judge Barron's trying to get at, the breadth of what that means. I believe the courts have applied it to require the dismissal of the indictment because it's as if the charges had not been brought. It's just part of our inherent power over the appeal that it comes with the authority to dispose of the case by getting rid of the judgment as well, even in the case in which the appeal itself has become moot. And because there has been no finality, this court retains jurisdiction to address how the case is disposed of. And this court often remands a case with instructions to the district court as to how to proceed on remand. So it's not an unusual situation. And the courts that have, I think, the Fifth Circuit, the Second Circuit, the Third Circuit, the Ninth, the Seventh, and the Eleventh have all focused on the finality rationale as the reason for adopting and maintaining the abatement doctrine. And that, I think, is because the appeal protects the integrity of the judicial process. We have to recognize the existence of human fallibility and try and safeguard against mistakes. And that the best we can do to ensure fairness and correctness of the judgment is to have the Court of Appeals review these cases before something is deemed final. So doesn't that rationale? What about collateral habeas proceedings? Suppose someone files petition for post-conviction review and then dies before it's adjudicated? Well, the courts so far have drawn lines between finality on direct appeal, which doesn't occur until after this court issues its decision, and what happens on collateral review. There may well be instances of unfairness in. And why would we draw the line there? Personally, I wouldn't. But the courts, but the other circuits so far have drawn that line. Because if we're in the line drawing, then I start thinking, you know, some, how many appeals, how many convictions are set aside on appeal? That I don't know. That I don't know. But I'd be happy to explore that and submit a 28-J letter. Fewer than you think should be. Absolutely. Except from this court. But in at least a habeas proceeding is technically a civil proceeding. So the line has a certain formality in the sense that it's not the criminal case itself, which the abatement doctrine is applying only in the criminal case as such. That's correct. And there's also been an adjudication that has been deemed final before you get to the habeas position. So I'd like to look at a number of courts that have focused on the victim's rights and policy changes in that area as a reason for not applying abatement. But that should not override the need to, if an appeal as of right is an essential safeguard and part of the ensuring fairness and correctness and the integrity of the system, victim's rights can't override all of that. Congress has not said that. Congress says that restitution requires a conviction. And if the conviction is not final, there's arguably no conviction. That victims may sometimes suffer is an uncomfortable part of our system, but it occurs in other instances where there's a focus on the integrity of the system. If you have an appeal where the statute of limitations is held to be violated, the victim doesn't get any rights. If you have an appeal where the Speedy Trial Act is violated, the victim doesn't have any rights. If you have an appeal where the exclusionary rule excludes evidence that's necessary to conviction, again, the victim is not going to be compensated. But because of our view of what is required for our system of justice, we require that certain things be done that will not compensate victims. And as I think- Can I just ask you the flip side of the question I asked Mr. Quinlivan, which is the SJC's approach, where you just make a notation in the docket of what happened, what is the practical significance of not doing that and instead doing what the abatement doctrine would have us do? In terms of victims? In terms of anyone. In other words, no matter what happens, there's a certain reality that has occurred. There was an appeal pending from a conviction before our court. The appellant died before we could hear it. We can say, we have this special doctrine that's been around for a long time. In this unusual circumstance, that means the conviction now is abated, ab initio. Or we could put a notation in the docket saying, this is an unusual case. We had a pending appeal before us. The person died. We dismissed it as moot. You should know all that when you look at the conviction. Between those two things, the government saying, what's really important you do, what the SJC does, that's a very important statement. Don't do what we've been doing. Other courts have done with ab initio. You say, no, it's really important we do what the courts are doing with ab initio. You not do what the SJC did. From your perspective, why is that such a big difference between those two things? What's the stakes in how we write it out? It's the collateral consequences. If there's a restitution order, if there are fines, if there are other suits, civil suits that are brought where a conviction would be deemed to preclude any kind of challenge. The thing is, if that's all that's at stake, one puzzling thing is the doctrine, as it's emerged, exists independent of any of those collateral consequences being present. Even if we had no restitution order, and all that was at issue was the conviction itself, plus the sentence that was a one-day sentence, presumably you each are taking the same positions you're now taking, which is, no, you really should do it the way the SJC does. No, you really should do it the way the doctrine of ab initio. Why? Why, from your perspective, is it so important to do it your way rather than what the SJC does? Well, it's looking at the integrity of the system, of our judicial system, and the importance of the doctrine of finality. So how is the system compromised by the SJC approach? Excuse me? How is the judicial system compromised, the integrity of the judicial system compromised by the SJC's approach, specifically? Well, the SJC's approach is not giving the same import to finality. It's saying, OK, it was never final, but we're going to allow the results of that non-final proceeding to stand regardless. It does that, but you're saying that that tarnishes the integrity. We should view that as, quote, It's minimizing the importance of finality in the judicial system. So I'd like to follow up on what Judge Barron is asking about. If we put aside a case with restitution involved, then it seems this is all about the label we attach at the end. In other words, there's no dispute that factually, there was a conviction, there was an appeal, the defendant died on appeal, so we've got nothing to decide. Everybody agrees with those facts. One solution is you just write those facts instead of trying to find some word like abatement that sums them up. Another is we pick a different label. We'll just say remand to the district court, write it in the docket, unfinished business, period. I guess the difference is you're just looking at the friends and family of the defendant on whether that family member has some particular label associated with them. Well, not just the label associated with it, but any potential collateral. Well, I said forget about a case involving restitution or fine or the like. Well, it's not just restitution or fine. If the conviction is upheld, then you can have civil suits in which that verdict will be deemed preclusive. It's not necessarily a question of restitution. You have independent civil suits. Although, then civil law can adjust for that and say, yes, well, there is a conviction, but we won't treat it as final for restitucata purposes. And there wouldn't be. I mean, the restatement position is that it's not collaterally binding, no matter what we call it. Whereas the restitution position does not, the restatement provision doesn't determine on how we classify what we do. It simply says if someone died pending appeal, then the criminal conviction will not have the preclusive effect it would otherwise have. Except a number of courts have described such a preclusive effect in independent civil proceedings as supporting the rationale for abatement. Well, they can still do that with their state law. That's a question of state law, not for us. Well, I will have to, I'd be happy to explore that federally a little further and, again, address it in a 28-J letter. But I guess at the root of what you're saying is that in all kinds of contexts, we treat the fact of conviction as having its own collateral consequence. Yes. And the idea that a judgment against a person of that kind would be treated as final enough to persist when their appeal right was not fully vindicated, despite their best efforts to do it, is against the basic idea of the system in which you have a right to appeal. It's the basic thrust of it, I take it, right? Yes, Judge Barron. Any further questions? Good. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee of the United States please reintroduce himself on the record? He has a two-minute rebuttal. Yes. Mark Winleben, again, on behalf of the United States. I just want to, I'll be very brief, I just want to touch upon the finality that my friend, principle that my friend has argued. There is a statutory right to appeal. Nobody disputes that. But multiple defendants choose not to exercise that right. Those convictions are not suspect or lacking in finality in any relevant sense. In addition, other defendants choose to waive their right to appeal in entering into a plea agreement with the government. And those convictions, too, are not suspect or lacking in finality in any relevant sense. At the end of the day, the abatement doctrine is not derived from the Constitution. Courts have recognized that it is essentially a common law doctrine and the equitable principles must be brought into play for all the reasons we've argued. When you balance the equities in this... That didn't make any sense. Because folks who choose not to appeal or folks who enter a plea aren't complaining about trial error. It's the people who do choose to appeal who say that they were somehow unjustly tried below that are seeking a final review. So it makes the right to have a review even more important.  Then is it fair for them to be left with a conviction in place wherein they didn't have a chance to have a final review? Yes, Judge Hobson, and I think I'm going back to my friend's argument because the argument is that a judgment of conviction isn't final in any relevant sense until an appeal has been decided. As a matter of law, for the reasons we pointed out, it is, and the question then is what's the remedy in that situation? Is it to treat the conviction as if it never occurred or to simply note what in fact occurred, which is the defendant died, the appeal was not decided, it was neither affirmed nor reversed? Unless the court has any other questions, we respectfully ask that the court decline to adopt the doctrine. Thank you very much. Thank you both for your arguments. Thank you, counsel. That concludes argument in this.